## Case No. 11,959a.

### ROBINSON v. The MEDORA.

[Betts' Scr. Bk. 492.]

District Court, S. D. New York. 1854.

MARITIME LIEN — AGENT TO PROCURE FREIGHT — CHARTER—NOTICE.

[An agent employed by the charterer of a ship to procure freight, having notice from the owner that he must rely on the personal credit of the charterer, has no lien on the ship for his services.]

[This was a libel by Samuel P. Robinson against the ship Medora.]

Betts & Donohue, for libelants.

Silliman & True, for claimants.

INGERSOLL, District Judge. The libellant in this case sues to recover compensation for services as agent in procuring freight and passengers for the ship for a voyage to Australia, in the fall of 1852. The ship was owned by George A. Trenholm and others, at Charleston, S. C., and R. Caldwell & Co., of this city, were their agents here. The ship being in this port in 1852, the libellant applied to the agents to sell the ship to Mrs. Erler, the wife of John C. Erler, of this city. An agreement was drawn up, dated September 3, 1852, and signed by R. Caldwell & Co., to which the libellant was the witness, and whose contents he was acquainted with. By that agreement Caldwell & Co. agreed to sell the ship to Mrs. Erler, and Mrs. Erler, with the consent of her husband, agreed to buy her, for $9,000, payable in 60 days from date, or before the ship should sail. Caldwell & Co. were to hold the ship until the money was paid, and whatever repairs were put on her were to be put on her by the purchaser, the ship not to be responsible therefor. The purchase money was never paid, and the ship was lost on her voyage to Australia. After the execution of the contract, John C. Erler proceeded to fit her out for the voyage, employed her captain and crew, took control of her, procured freight for the voyage, and employed the libellant to act as her agent, and the libellant performed services as such agent and broker.

The respondents claim that the libellant has no claim against them at all, under these facts, and no lien as against them on the ship. They claim also, that he has no maritime lien at all for such services, likening him to a ship's husband, whose duty it is to perform such services, for which he has no lien. They also liken his claim to that of a stevedore for stowing the freight, after it has been procured, for which, as has been decided in several cases, no lien exists against the ship. I can perceive no difference in principle between the case of the stevedore and the agent to procure freight. The latter bargains to have the goods put on board, that the ship may earn freight. The former actually puts them on board, and receives and stows them. It would seem, on principle, that, if the acts consequent upon the bargain made did not create a new maritime lien, then the bargain, and the services by which it is brought about, ought not to be considered maritime services, securing for them a maritime lien. But the case of The St. Mary, decided in this court, and affirmed on appeal by the United States circuit court [Case No. 12,242], has decided that the services of a ship's agent or broker, in procuring passengers and freight, on a contract made with the owner, will secure to the agent a maritime lien, if he looks to the ship as a security at the time of performing the services; and such is, therefore, the law of this court. It does not, however, follow that the party rendering such services, at the request of one who is not an owner, would have a lien. If the party in possession of the ship, and having control of her for the voyage, is prohibited by the owner, from making such a lien, and the party performing the services knew of such prohibition at the time of his agreement to perform them, he cannot have a lien, as against the owner. The contract may be a good maritime contract against the party contracting, but would not give a lien on the ship. So if the party who performed the services was notified that he must look to the personal responsibility of the one with whom he had agreed for their performance, and not to the ship, he cannot have a lien upon the ship. He does not look to the ship for security when he performs the services, and unless he does so, no lien attaches. He cannot by contract have a lien, against the express prohibition of the party to be affected by the lien. The libellant contracted with John C. Erler to perform these services after the execution of the agreement of Sept. 3d, and Robert Caldwell, the agent of the claimants, deposes that about that time he told the libellant that whatever was done for the ship by any one must be on Erler's personal responsibility, and not on the credit of the ship or her owners. Having received such notice, he can have no lien for his services. His right of such lien has been waived.

The libellant claims that Caldwell is not a competent witness, because the stipulation for value is signed by "Caldwell & Co., agents for Trenholm & Co." But the bond was not signed by Robert Caldwell, but by one of his partners, and could not, therefore, be binding on him, as not within the authority of one person to bind another by executing such a stipulation, unless it is ratified or approved

by the other partner. Caldwell, not being shown to have done so, is not bound by the stipulation, and therefore not interested in the event of the suit.

If Erler, or his wife, after the execution of the contract of Sept. 3d, are to be considered as owners of the ship, she was then a domestic vessel, and against such no lien is given by admiralty law, even for materials and supplies. Such services as those rendered by the libellant could not, surely, be entitled to higher consideration. Libel dismissed, with costs.